[Cite as *State v. Backie*, 2011-Ohio-5801.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Sheila G. Farmer, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| v. | : |  |
|  | : | Case No. 2011-CA-00060 |
| TRAVONCE RASHAWN BACKIE | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal appeal from the Stark County
                             Court of Common Pleas, Case No. 2010-
                             CR-1821(A)

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      November 7, 2011

APPEARANCES:

For Plaintiff-Appellee              For Defendant-Appellant

JOHN FERRERO                        GEORGE URBAN
STARK COUNTY PROSECUTOR             116 Cleveland Ave N.W.
BY: LEWIS GUARNIERI                 Suite 808
110 Central Plaza S., Ste. 510      Canton, OH  44702
Canton, OH  44702

*Gwin, P.J.*

{¶ 1}  Defendant–appellant Travonce Backie appeals from his convictions and sentences in the Stark County Court of Common Pleas on one count of aggravated burglary with a firearm specification in violation of R.C. 2911.11(A)(2) and R.C. 2941.145.  Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶ 2}  In January 2011 the Stark County Grand Jury returned an indictment charging appellant with one count each of aggravated burglary and aggravated robbery, with attendant firearm specifications for each offense as a result of a home invasion.

{¶ 3}  Shortly after eight o'clock during the night of September 20, 2010, Samantha Coons was preparing to go to bed inside her Canton residence. Ernestine Corinda Mullen, a neighbor who needed a place to stay temporarily, was asleep downstairs, and Coons had just put her young toddler to bed with his father, Dennis Knight. Knight was Coons's boyfriend and was already asleep in their bedroom. Mullen was asleep downstairs and was awaken by a knock on the back door. As she went to the back door, Mullen saw the door being kicked opened and three masked men rush inside. Mullen turned to run away and to alert Knight, but was struck in the back of the head and knocked out.

{¶ 4}  Coons heard the door being kicked in and glass breaking, and thought it might be her dog getting into some plates left on the dining room table. She therefore went to the top of stairs and yelled at the dog. The dog, which was in the bedroom under the bed, began barking.

{¶ 5} Coons then saw three masked men come up the stairs, so she ran back into the bedroom and attempted to shut the door and lock it. The men, however, were able to overpower her, and come into the bedroom. As the men entered, they shouted repeatedly that they were the Canton police. Afraid for herself and her child, Coons started fighting with the first man who entered the bedroom. During the struggle with this man, Coons was able to pull down the bandana "do-rag" that covered his face. Coons immediately recognized this intruder as "Woody," who is William Appis. Coons shouted out his name, and Woody turned and fled the scene. While Coons was struggling with Woody, the other two men attended to Knight.

{¶ 6} Awakened from his sleep, Knight immediately saw an automatic handgun stuck in his face by one of the masked men, who then proceeded to strike him a couple of times in the head with the barrel of the gun. The other masked intruder was armed with a Taser, and was using it on the dog. Both men demanded to know where the money was hidden. As the man armed with the gun attended to Knight, the other man rifled through the night stand drawers looking for money. He eventually dumped out Coons's purse and took the $350.00 that Coons had saved for Christmas shopping. As the two men backed up to exit the room, the fan that was in the bedroom blew up the bandana do-rag that was covering the face of the intruder armed with the handgun. A lamp was on in the bedroom, as well as a small nightlight by the bed. Knight immediately recognized this intruder as someone whom he knew- Travonce "Tre" Backie, the appellant. Knight knew that appellant and Woody were friends, and so he asked appellant, "How you going to rob me and my girl with my son in the bedroom?" Appellant and the other individual fled from the bedroom.

{¶ 7} Both Coons and Knight believed that Woody knew of the existence of the Christmas money because he was at their house a day or so before this incident. On that occasion Coons had asked Knight for money to pay their bills. Coons had gone to the ATM to make a withdrawal from their account, only to find that there were insufficient funds in the account. The two then discussed the necessity of using the Christmas money- cash that they saved for Christmas shopping- to pay their bills, which was kept upstairs in the bedroom. In addition, they were aware that appellant was a friend of Woody.

{¶ 8} Once the intruders left, Knight and Coons called 911 and checked on the condition of Mullen, who was unconscious downstairs. Knight then called appellant repeatedly, asking why he did it. Appellant responded that he didn't do it, so Knight hung up on him. When the police arrived, both Knight and Coons told the police what had happened, as well as the identity of both appellant and Appis. Appis ("Woody") was a friend of theirs, and appellant had dated Coons's sister.

{¶ 9} Both Appis and appellant had in fact been in their home before. The police later showed Knight a photo array, from which Knight identified appellant as the armed intruder who threatened to shoot him during the robbery.

{¶ 10} Kenneth Higgins, a friend of Coons and Knight, was driving that night over to their residence to visit. He parked his vehicle in the driveway and had just exited his vehicle when he was confronted by two masked men racing from the residence of Coons and Knight. One of the men was wearing a ski mask, while the other had his face covered with something Higgins could not identify. He did not pay attention to this other masked man since the one with the ski mask was pointing a gun in his face. The men

demanded that Higgins give them what he had in his pockets. As Higgins kept his hands up in the air, the unarmed man went through Higgins's pockets and took his wallet and cigarettes. The men then fled towards a neighbor's yard. His wallet was eventually recovered in this neighbor's driveway.

{¶ 11} Appellant presented an alibi defense through the testimony of Ashley Myers. Myers testified that appellant was with her all day on September 20, and did not leave her home until after 8:00 p.m. In addition, William ["Woody"] Appis testified on appellant's behalf, admitting that he (Appis) was one of the intruders, but that appellant was not one of the three men who had invaded the home.

{¶ 12} The jury in this case returned a mixed verdict. It found appellant not guilty of the aggravated robbery charge with the firearm specification, but guilty of the aggravated burglary charge and guilty of the attendant firearm specification. The trial court sentenced appellant to an aggregate prison term of thirteen years. Ten years for the aggravated burglary, and a mandatory consecutive three-year term for the attendant firearm specification. This sentence was also imposed consecutively with appellant's criminal sentence in a separate criminal case.[1]

{¶ 13} Appellant has timely appealed raising the following two Assignments of Error:

{¶ 14} "I. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶ 15} "II. THE TRIAL COURT'S SENTENCING OF APPELLANT TO MAXIMUM AND CONSECUTIVE SENTENCES WAS CONTRARY TO LAW."

---

[1] *State v. Backie,* Stark County Court of Common Pleas Case No. 2010-CR-1422

I.

{¶ 16} In his First Assignment of Error, appellant argues that his convictions are based upon insufficient evidence and are against the manifest weight of the evidence. We disagree.

{¶ 17} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown* (2010), --- U.S. ----, 130 S.Ct. 665, 673, 175 L.Ed.2d 582 (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010-Ohio-1017 at ¶146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010-Ohio-2720 at ¶68.

{¶ 18} *Jackson,* thus establishes a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence. First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution. *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781. This means that a court of appeals may not usurp the role of the finder of fact by considering how it would have resolved the conflicts, made the inferences, or considered the evidence at trial. Id. Rather, when "faced with a record of historical facts that supports conflicting inferences" a reviewing court "must presume even if it does not affirmatively appear in the record that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson,*

supra 443 U.S. 307, 99 S.Ct. 2781; see also, *McDaniel,* --- U.S. ----, 130 S.Ct. at 673-674, 175 L.Ed.2d 582; *United States v. Nevils* (9th Cir 2010), 598 F.3d 1158, 1164.

{¶ 19} Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow "*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781; *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, superseded by constitutional amendment on other grounds as stated by *State v. Smith,* 80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668; *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492 superseded by State constitutional amendment on other grounds as stated in *State v. Smith* (1997), 80 Ohio St.3d 89, 684 N.E.2d 668;  See, also *State v. Clay*, supra at ¶ 70.

{¶ 20} This second step protects against rare occasions in which "a properly instructed jury may * * * convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 317, 99 S.Ct. 2781. More than a "mere modicum" of evidence is required to support a verdict. Id. at 320, 99 S.Ct. 2781, (rejecting the rule that a conviction be affirmed if "some evidence" in the record supports the jury's finding of guilt). At this second step, however, a reviewing court may not "'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt,'" *Jackson* at 318-319, 99 S.Ct. 2781, quoting *Woodby v. INS* (1966), 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362, only whether "*any*" rational trier of fact could have made that finding. *Jackson* at 319, 99 S.Ct. 2781; *United States v. Nevills*, supra, 598 F.3d at 1164. Under *Jackson,* the assessment of the

credibility of witnesses is generally beyond the scope of review. *Schlup v. Delo* (1995), 513 U.S. 298, 330, 115 S.Ct. 851, 868; *Wright v. West* (1992), 505 U.S. 277, 296, 112 S.Ct. 2482, 2492.

{¶ 21} Thus, the *Jackson* standard focus on whether any rational juror could have convicted, looks to whether there is sufficient evidence which, if credited, could support the conviction. *Schlup v. Delo* (1995), 513 U.S. 298, 330, 115 S.Ct. 851, 868. The Court in *Schlup* made clear that, "the use of the word "could" focuses the inquiry on the power of the trier of fact to reach its conclusion." Id.  As the Court further explained, "the question whether the trier of fact has power to make a finding of guilt requires a binary response: Either the trier of fact has power as a matter of law or it does not..." *Schlup*, 513 U.S. at 330, 115 S.Ct. at 868. (Citations partially omitted); See also, *Sanborn v. Parker* (6th Cir 2010), 629 F.3d 554, 578.

{¶ 22} Finally, under the *Jackson* standard a reviewing court must consider all of the evidence admitted by the trial court, regardless whether that evidence was admitted erroneously. *McDaniel,* supra, --- U.S. ----, 130 S.Ct. at 672, 175 L.Ed.2d 582.

{¶ 23} The Ohio Supreme Court elucidated the standard of review for a criminal manifest weight challenge, as follows:

{¶ 24} "The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. In *Thompkins,* the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a

matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive--the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E.2d 541. 'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

{¶ 25} "Both *C.E. Morris Co.,* 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, and *Thompkins* instruct that the fact-finder should be afforded great deference. However, the standard in *C.E. Morris Co.* tends to merge the concepts of weight and sufficiency. See *State v. Maple* (Apr. 2, 2002), 4th Dist. No. 01CA2605, 2002 WL 507530, fn. 1; *State v. Morrison* (Sept. 20, 2001), 10th Dist. No. 01AP-66, 2001 WL 1098086. Thus, a judgment supported by "some competent, credible evidence going to all the essential elements of the case" must be affirmed. *C.E. Morris Co.* Conversely, under *Thompkins,* even though there may be sufficient evidence to support a conviction, a reviewing court can still re-weigh the evidence and reverse a lower court's holdings. *State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541. Thus, the civil-manifest-weight-of-the-evidence standard affords the lower court more deference then does the criminal standard. See *Barkley v. Barkley* (1997), 119 Ohio App.3d 155, 159, 694

N.E.2d 989." *State v. Wilson,* 713 Ohio St.3d 382, 387-88, 2007-Ohio-2202 at ¶ 25-26; 865 N.E.2d 1264, 1269-1270.

{¶ 26} An appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. (Quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720-721). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

{¶ 27} In the case at bar, appellant essentially argues first that the only person to identify him, Dennis Knight was not to be believed because his testimony at trial differed from his statement to the police.  Appellant argues that at trial Mr. Knight testified that he was able to observe appellant's face because a fan in the bedroom blew the bandana from appellant's face. However, appellant argues, Mr. Knight never told the police about a fan in the bedroom. Appellant additionally posits that the jury should have believed his alibi witness. Additionally, appellant contends that his conviction for the firearm specification is based upon insufficient evidence and is against the manifest weight of the evidence because the state failed to prove that the firearm was operable.

{¶ 28} A review of the record reveals that Mr. Knight never wavered in his description of the events that occurred in the home on the night in question in one important respect.  He consistently told the police and testified at trial that the bandana or mask appellant had used to cover his face blew upward revealing appellant's face. Further, Mr. Knight knew appellant from the past and immediately recognized him.

{¶ 29} In addition, the jury could reasonably have decided to believe the victims rather than appellant's alibi witness. The jury is able to observe the witnesses testify and can evaluate body language, voice inflection, and facial expressions. These are valuable tools for assessing credibility; tools which are not available to an appellate court working from the record alone. As such, a jury's assessment of credibility is entitled to considerable deference. See *Thompkins,* supra, at 390. Although appellant presented an alibi concerning his whereabouts on the day of the crime, the jury must consider all of the evidence presented by the state as well as other defense witnesses in determining the validity of the alibi. In doing so in this case, we do not find the jury lost its way in reviewing the conflicting evidence and finding appellant guilty of aggravated burglary. See, *State v. McCall* (Oct. 10, 2001), Muskingum App. No. 01CA23.

{¶ 30} We conclude that the evidence was sufficient to support appellant's identification as one of the individuals who invaded the home as well as to support a conviction for aggravated burglary and the jury, in resolving conflicts in the evidence, did not clearly lose its way and create a manifest miscarriage of justice.

{¶ 31} Appellant, in the case sub judice, was further convicted of a firearm specification pursuant to R.C. 2941.145. Such section states, in relevant part, as follows: "(A) Imposition of a three-year mandatory prison term upon an offender under division (B)(1)(a) of section 2929.14 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm,

indicated that the offender possessed the firearm, or used it to facilitate the offense." In turn, "firearm" is defined in R.C. 2923.11 as follows: "(B)(1) "Firearm" means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." In the case at bar, appellant argues that the operability of the gun was not established by sufficient evidence and the jury's finding of guilt on the firearm specification was against the manifest weight of the evidence.

{¶ 32} Pursuant to R.C. 2923.11(B)(2), "[w]hen determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm." Thus, in determining whether a firearm was operable or could have been rendered operable at the time of the offense, the trier of fact is permitted to consider all relevant facts and circumstances surrounding the crime, including any implicit threats made by the individual controlling the firearm. *State v. Thompkins,* supra, paragraph one of the syllabus. See also, *State v. Murphy* (1990), 49 Ohio St.3d 206, 551 N.E. 932. As noted by the Ohio Supreme Court in *Thompkins,* supra "it should be abundantly clear that where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable." Id*.* at 384, 678 N.E.2d 541.

{¶ 33} Upon our review of the record and after reviewing all relevant facts and circumstances surrounding the crime, we find that the state proved beyond a reasonable doubt that the firearm used by appellant was operable or could have been readily rendered operable at the time of the offense.

{¶ 34} Mr. Knight and Ms. Coons each identified the weapon used during the commission of the crime as a semi-automatic handgun. Appellant pointed the firearm at the individuals clearly conveying to each that he would shoot him or her if the individual did not comply with the demands of the intruders. Appellant pointed the firearm directly into Mr. Knight's face and hit him in the head with the barrel of the gun two times.

{¶ 35} Under the facts and circumstances of the case at bar, the evidence was sufficient to prove the operability of the gun. We conclude that the evidence was sufficient to support a conviction for the firearm specification and the jury, in resolving conflicts in the evidence, did not clearly lose its way and create a manifest miscarriage of justice.

{¶ 36} Appellant's First Assignment of Error is overruled.

II.

{¶ 37} In his Second Assignment of Error appellant argues the trial court's imposition of a consecutive sentence was contrary to law and an abuse of discretion because it failed to consider all of the required factors under R.C. 2929.11 and R.C. 2929.12. We disagree.

{¶ 38} Specifically, appellant argues the transcript of proceedings fails to reflect that the trial court considered R.C. 2929.11 and R.C. 2929.12 before imposing sentence.

{¶ 39} In a plurality opinion, the Supreme Court of Ohio established a two-step procedure for reviewing a felony sentence. *State v. Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. The first step is to "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." *Kalish* at ¶ 4. If this first step "is satisfied," the second step requires the trial court's decision be "reviewed under an abuse-of-discretion standard." Id.

{¶ 40} As a plurality opinion, *Kalish* is of limited precedential value. See *Kraly v. Vannewkirk* (1994), 69 Ohio St.3d 627, 633, 635 N.E.2d 323 (characterizing prior case as "of questionable precedential value inasmuch as it was a plurality opinion which failed to receive the requisite support of four justices of this court in order to constitute controlling law"). *See, State v. Franklin* (2009), 182 Ohio App.3d 410, 912 N.E.2d 1197, 2009-Ohio-2664 at ¶ 8. "Whether Kalish actually clarifies the issue is open to debate. The opinion carries no syllabus and only three justices concurred in the decision. A fourth concurred in judgment only and three justices dissented." *State v. Ross,* 4th Dist. No. 08CA872, 2009-Ohio-877, at FN 2; *State v. Welch,* Washington App. No. 08CA29, 2009-Ohio-2655 at ¶ 6.

{¶ 41} Nevertheless, until the Supreme Court of Ohio provides further guidance on the issue, we will continue to apply *Kalish* to appeals involving felony sentencing. *State v. Welch,* supra*; State v. Reed,* Cuyahoga App. No. 91767, 2009-Ohio-2264 at fn. 2.

{¶ 42} The Supreme Court held, in *Kalish,* that the trial court's sentencing decision was not contrary to law. "The trial court expressly stated that it considered the

purposes and principles of R.C. 2929.11, as well as the factors listed in R.C. 2929.12. Moreover, it properly applied post-release control, and the sentence was within the permissible range. Accordingly, the sentence is not clearly and convincingly contrary to law." *Kalish* at ¶ 18. The Court further held that the trial court "gave careful and substantial deliberation to the relevant statutory considerations" and that there was "nothing in the record to suggest that the court's decision was unreasonable, arbitrary, or unconscionable." *Kalish* at ¶ 20; *State v. Wolfe*, Stark App. No. 2008-CA-00064, 2009-Ohio-830 at ¶ 25.

**{¶ 43}** The relevant sentencing law is now controlled by the Ohio Supreme Court's decision in *State v. Foster,* i.e. " * * * trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." 109 Ohio St.3d 1, 30, 2006-Ohio-856 at ¶ 100, 845 N.E.2d 470, 498.

**{¶ 44}** In the first step of our analysis, we review whether the sentence is contrary to law. In the case at bar, appellant was convicted of aggravated burglary a felony of the first degree. The sentencing range for a first-degree felony is three, four, five, six seven, eight, nine or ten years.  R.C. 2929.14(A)(1). The trial court sentenced appellant to ten years in prison, which is the maximum sentence available.

**{¶ 45}** Upon review, we find that the trial court's sentencing on the charge complies with applicable rules and sentencing statutes. The sentence was within the statutory sentencing range. Furthermore, the record reflects that the trial court considered the purposes and principles of sentencing and the seriousness and recidivism factors as required in Sections 2929.11 and 2929.12 of the Ohio Revised

Code and advised appellant regarding post release control. Therefore, the sentence is not clearly and convincingly contrary to law.

**{¶ 46}** Having determined that the sentence is not contrary to law we must now review the sentence pursuant to an abuse of discretion standard. *Kalish* at ¶ 4; *State v. Firouzmandi,* supra at ¶ 40. In reviewing the record, we find that the trial court gave careful and substantial deliberation to the relevant statutory considerations.

**{¶ 47}** The failure to indicate at the sentencing hearing that the court has considered the factors in R.C. 2929.11 and 2929.12 does not automatically require reversal. *State v. Reed,* 10th Dist. No. 09AP–1163, 2010–Ohio–5819, ¶ 8. "When the trial court does not put on the record its consideration of R.C. 2929.11 and 2929.12, it is presumed that the trial court gave proper consideration to those statutes." Id.*,* citing *Kalish* at ¶ 18, fn. 4. "The Code does not specify that the sentencing judge must use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors." *State v. Arnett,* 88 Ohio St.3d 208, 215, 2000–Ohio–302.

**{¶ 48}** Further the Supreme Court of Ohio held in *State v. Hodge,* 128 Ohio St.3d 1, 2010–Ohio–6320, "For all the foregoing reasons, we hold that the decision of the United States Supreme Court in *Oregon v. Ice* [(2009), 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517], does not revive Ohio's former consecutive-sentencing statutory provisions, R.C. 2929.14(E)(4) and 2929.41(A), which were held unconstitutional in *State v. Foster.* Because the statutory provisions are not revived, trial court judges are not obligated to engage in judicial fact-finding prior to imposing consecutive sentences

unless the General Assembly enacts new legislation requiring that findings be made."
See, *State v. Fry*, Delaware App. No. 10CAA090068, 2011-Ohio-2022 at ¶ 16-17.

{¶ 49} In the case at bar, the trial court's March 14, 2011 journal entry states it has considered the purposes and principles of sentencing as set forth in R.C. 2929.11, as well as the factors set forth in R.C. 2929.12.

{¶ 50} We find the trial court properly considered the purposes and principles of sentencing set forth in R.C. 2929.11, as well as the applicable factors set forth in R.C. 2929.12, along with all other relevant factors and circumstances. While appellant may disagree with the weight given to these factors by the trial judge, appellant's sentence was within the applicable statutory range for a felony of the first degree and therefore, we have no basis for concluding that it is contrary to law. Similarly, the trial court's sentence cannot be said to be an abuse of discretion given the circumstances here. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219 (an abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable.").

{¶ 51} Accordingly, we overrule appellant's Second Assignment of Error.

{¶ 52} For the foregoing reasons, the judgment of the Stark County Court of Common Pleas, Ohio, is affirmed.

By Gwin, P.J.,

Farmer, J., and

Delaney, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. SHEILA G. FARMER

_____
HON. PATRICIA A. DELANEY

[Cite as *State v. Backie*, 2011-Ohio-5801.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                          :
                                       :
              Plaintiff-Appellee       :
                                       :
                                       :
v.                                     :        JUDGMENT ENTRY
                                       :
TRAVONCE RASHAWN BACKIE                :
                                       :
                                       :
              Defendant-Appellant      :        CASE NO. 2011-CA-00060


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Ohio, is affirmed. Costs to appellant.


                                       _____
                                       HON. W. SCOTT GWIN

                                       _____
                                       HON. SHEILA G. FARMER

                                       _____
                                       HON. PATRICIA A. DELANEY